**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ROGERIO TORRES,

      Plaintiff,

  -against-

SHAWN THORPE,

      Defendant.

**COMPLAINT**

Case No.   1:26-cv-414 (AJB/MJK)

Plaintiff ROGERIO TORRES, for his Complaint in this matter, alleges the following:

**NATURE OF THE ACTION**

1.     This is a § 1983 action for false arrest, excessive force, and malicious prosecution.

2.     Defendant SHAWN THORPE attacked Plaintiff without provocation and knocked him to the ground. Defendant subsequently attacked Plaintiff again, threw him to the ground, and falsely arrested him. In arresting Plaintiff, Defendant placed handcuffs more tightly than necessary on Plaintiff.

3.     Defendant also filed numerous false criminal charges against Plaintiff in an attempt to cover up his own malfeasance.

4.     Plaintiff suffered serious injuries to his wrists and lost nearly a full day of his freedom.

**THE PARTIES**

5.     Plaintiff ROGERIO TORRES is a citizen of New York State.

6.     On information and belief, Defendant SHAWN THORPE is a citizen of New York State and an officer of the Ballston Spa Police Department. He is being sued in his personal capacity.

**JURISDICTION AND VENUE**

7.    This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

8.    This Court has personal jurisdiction over the Defendant because the Defendant resides in New York State and because the wrongs were committed in New York State.

9.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because the Plaintiff and Defendant reside in this district and because a substantial part of the events and omissions giving rise to the claims occurred in this district.

**THE FACTS**

10.    Plaintiff has two children.  The children's mother, Katy Ballas, has custody of the children.

11.    On or about May 27, 2023, Ms. Ballas was engaged in a dispute with Plaintiff's mother, Mona Hadcock.  At that time, the children were at the home of Ms. Ballas, and Ms. Hadcock was at Ms. Ballas's home because of an incident the day before.  Plaintiff had gone to Ms. Ballas's home that morning because both Ms. Ballas and Ms. Hadcock had called him and requested his presence.

12.    On that morning, both Ms. Ballas and Ms. Hadcock called the police to complain about each other. Neither was calling to complain about Plaintiff or made any allegation of wrongdoing by Plaintiff.

13.    The Defendant arrived at Ms. Ballas's home and spoke with her outside.

14.    When Plaintiff saw that Ms. Ballas was speaking to a police officer, he went outside to suggest to both of them that Ms. Hadcock take the children to her home so that the children would not witness the friction between their parents.

2

15.     When Plaintiff got close to Defendant and Ms. Ballas, Defendant yelled, "Get out of here!" and attacked Plaintiff.

16.     Having heard Defendant yell, "Get out of here!" Plaintiff turned around and attempted to leave.  Defendant pursued Plaintiff and pushed him multiple times.  One of the pushes caused Plaintiff's shoes to fall off.  Another push caused Plaintiff to spill hot coffee onto his leg. When Plaintiff asked Defendant to get his hands off of him, Defendant elbowed Plaintiff in the jaw and thereby knocked him to the ground.

17.     Defendant did not attempt to arrest Plaintiff or tell Plaintiff that he was under arrest during this initial altercation.

18.     Plaintiff got up and left Defendant.    At that point, Defendant did not pursue Plaintiff or attempt to arrest him. Plaintiff returned inside Ms. Ballas's home.

19.     When Plaintiff informed his mother of what had just occurred, she suggested that he leave in order to remove himself from the danger from Defendant.  Following his mother's advice, Plaintiff went to his car to leave.

20.     When Plaintiff got into his car, Defendant ran toward Plaintiff's car, screamed at Plaintiff that Plaintiff was under arrest, and ordered Plaintiff out of the car.

21.     Plaintiff asked Defendant why he was under arrest, but Plaintiff refused to give a reason.  Plaintiff was by then not trying to evade arrest, but Defendant nonetheless began attempting to break Plaintiff's car window.

22.     Plaintiff asked Defendant not to break his window and to move to the driver's side of the car.  Plaintiff rolled down the window and again asked Defendant why he was being arrested. Defendant again refused to answer and continued to try to break Plaintiff's car window.

3

23. Plaintiff voluntarily stepped out of his car to surrender to Defendant's arrest. Defendant violently grabbed Plaintiff by his shirt, slammed him to the ground, got on top of Plaintiff, shoved his knees in Plaintiff's back, and twisted Plaintiff's arms in the act of handcuffing him.

24. Defendant also tightened the handcuffs considerably tighter than necessary.

25. No reasonable person could have thought that Plaintiff was resisting arrest or that any force was necessary.

26. As a result of Defendant's unprovoked assault and excessive force, Plaintiff suffered considerable injury. His immediate pain was to his face, chest, and back from being slammed and to his wrists from the overly tight handcuffs. The pain to his wrist was worse with any finger movement and considerably worse with any wrist movement. His wrist pain continues to this day.

27. Plaintiff was ultimately taken to the police station, where he sat chained to a bench for hours.

28. Defendant wrote and signed several accusatory instruments charging Plaintiff with second-degree obstructing governmental administration (PL § 195.05), endangering the welfare of a child (PL § 260.10(1)), disorderly conduct (PL § 240.20(3)), resisting arrest (PL § 205.30), first-degree criminal contempt (PL § 215.51(c)), and second-degree harassment (PL § 240.26).

29. The allegations that Defendant elucidated in the accusatory instruments were false, and Defendant knew that they were false.

30. Plaintiff was released from jail later that day when he posted bail. Plaintiff lost nearly a full day of his freedom.

31. The charge of first-degree criminal contempt was dismissed on or about June 3, 2023.

32. Plaintiff had to return to court several times over the course of nearly two years because of Defendant's malicious prosecution.

33. On the day of Plaintiff's trial, the District Attorney's office voluntarily dismissed all of the misdemeanor charges before the trial commenced. They did so because they knew that Plaintiff was innocent of all charges, but they thought that by prosecuting Plaintiff only for the violation charges, which does not entitle Plaintiff to a jury trial, they could either persuade Plaintiff to plead guilty to the minor violation or secure a conviction from the judge in order to stave off this lawsuit. The prosecutors who knew the facts of the case could easily predict that Plaintiff would file this lawsuit.

34. Plaintiff refused to plead guilty to anything or accept an Adjournment in Contemplation of Dismissal.

35. On March 9, 2026, Plaintiff was acquitted of the final violation charges of second-degree harassment and disorderly conduct.

36. As a result of Defendant's wrongful conduct, Plaintiff has suffered considerable physical and emotional damages.

37. In particular, Plaintiff has suffered back pain, wrist pain, and other physical damages.

38. Also, Defendant has suffered panic attacks, stress, and worry to the point of nausea and vomiting. Plaintiff is now afraid to go to the village where his children live.

## COUNT ONE
42 U.S.C. § 1983 – Fourth Amendment – False Arrest/False Imprisonment

39. Plaintiff realleges paragraphs 1 through 38 as if same were fully set forth at length herein.

40. On or about May 27, 2023, Defendant arrested Plaintiff without probable cause or an arrest warrant.

41. Plaintiff was aware of the confinement.  He spent the next several hours in jail.

42. Plaintiff did not consent to being confined.

43. By arresting Plaintiff without a warrant or probable cause, Defendant violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures.

44. Plaintiff suffered considerable damages as a result of his false arrest.  He lost several days of his freedom, endured considerable inconvenience having to return to court multiple times, and suffered the embarrassment and humiliation of having been arrested.

## COUNT TWO
42 U.S.C. § 1983 – Malicious Prosecution

45. Plaintiff realleges paragraphs 1 through 44 as if same were fully set forth at length herein.

46. On or about May 27, 2023, Defendant wrote and signed several accusatory instruments against Plaintiff. These accusatory instruments falsely initiated criminal proceedings against Plaintiff.

47. Defendant knew that the facts he was alleging in the accusatory instruments were false.  Defendant had no probable cause to believe that Plaintiff had committed any crime.

48. All of the charges against Plaintiff were ultimately dismissed.

49. Defendant wrote and signed these accusatory instruments to cover up his own malfeasance in unjustifiably attacking Plaintiff.

6

50.    As a result of this illegal and malicious prosecution, in violation of Plaintiff's Fourth Amendment and Due Process rights, Plaintiff suffered the loss of his freedom for several days and considerable emotional damage.

## COUNT THREE
### 42 U.S.C. § 1983 – Fourteenth Amendment – Excessive Force

51.    Plaintiff realleges paragraphs 1 through 50 as if same were fully set forth at length herein.

52.    Before arresting Plaintiff, Defendant unjustifiably attacked Plaintiff.  Defendant pushed Plaintiff, elbowed him in the jaw, and knocked him to the ground.

53.    This attack was not in the course of arresting Plaintiff.

54.    By using excessive force against a free person, Defendant violated Plaintiff's Fourteenth Amendment right to Due Process.

55.    As a result of Defendant's unconstitutional conduct, Plaintiff suffered considerable physical and emotional damages.

## COUNT FOUR (in the alternative to Count Three)
### 42 U.S.C. § 1983 – Fourth Amendment – Excessive Force

56.    Plaintiff realleges paragraphs 1 through 55 as if same were fully set forth at length herein.

57.    Defendant unjustifiably attacked Plaintiff.  Defendant pushed Plaintiff, elbowed him in the jaw, and knocked him to the ground.

58.    If this attack was during the course of arresting Plaintiff, then such force violated Plaintiff's Fourth Amendment right to be free from excessive force during an arrest.

59.    As a result of Defendant's unconstitutional conduct, Plaintiff suffered considerable physical and emotional damages.

**COUNT FIVE**
42 U.S.C. § 1983 – Fourth Amendment – Excessive Force

60.     Plaintiff realleges paragraphs 1 through 59 as if same were fully set forth at length herein.

61.     In the course of arresting Plaintiff, Defendant used more force than was necessary. Defendant violently grabbed Plaintiff by his shirt, slammed him to the ground, got on top of Plaintiff, shoved his knees in Plaintiff's back, and twisted Plaintiff's arms in the act of handcuffing him.

62.     As a result of this disproportionate and excessive force, Plaintiff suffered considerable physical and emotional damages.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests that the Court grant the following relief:

A.     Award compensatory damages in an amount to be determined at trial for Plaintiff's physical damages;

B.     Award compensatory damages in an amount to be determined at trial for Plaintiff's emotional damages;

C.     Award punitive damages because Defendant's conduct is so outrageous that punitive damages are warranted;

D.     Award reasonable attorneys' fees, together with the cost of this action;

E.     Grant such other relief as the Court may deem appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands trial by jury in this action.

Dated: March 17, 2026
           New York, New York

                                    Respectfully submitted,

                                    /s/ Joshua Pepper
                                    Joshua Pepper
                                    30 Wall Street, 8th floor
                                    New York, New York 10005
                                    212-804-5768
                                    jpepper@jpepperesq.com